IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

_____

C.A. No. 12-56566, 13-55048

_____

DARYOUSH JAVAHERI

Plaintiff-Appellant

v.

JPMORGAN CHASE BANK, N.A.

Defendant-Appellee

_____

**REPLY BRIEF OF APPELLANT**

_____

Appeal from Judgment of the United States District Court
For the Central District of California
D.C. No. 10-cv-05152-GW-PLA
Consolidated with
D.C. No. 11-cv-10072-ODW-FFM
(Honorable Otis D. Wright)

_____

DOUGLAS GILLIES, ESQ
CA Bar No. 53602
3756 Torino Drive,
Santa Barbara, CA 93105
(805) 682-7033
Email: douglasgillies@gmail.com

Attorney for Appellant
DARYOUSH JAVAHERI

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

I. CHASE AND CRC WERE NOT AUTHORIZED TO INITIATE
FORECLOSE ON THE WELLWORTH PROPERTY ................................. 1

   A. The Substitution of Trustee (Wellworth) was a forgery ....................... 1

   B. Javaheri has standing to object to forged, robo-signed documents
without alleging tender.............................................................................. 5

   C. A Missing Collateral File indicates that Chase is not authorized to
foreclose. .................................................................................................. 8

   D. Conflicting evidence raises a substantial issue whether Chase acquired
any interest in Javaheri's Note. ................................................................. 9

II. THE COURT ERRED IN DENYING JAVAHERI'S REQUEST TO
ADD WILLIAM PAATALO AS AN EXPERT WITNESS (WILSHIRE). 11

   A. Paatalo's Declaration was timely for purposes of the motion for
summary judgment................................................................................... 11

   B. Striking the Paatalo declaration prevented the Court from deciding
Javaheri's case on the merits, and less drastic sanctions were available. 16

III. CHASE AND CRC WERE NOT AUTHORIZED TO INITIATE
FORECLOSURE ON THE WILSHIRE PROPERTY ................................. 18

   A. The loan was not transferred to Chase, LaSalle, or Bank of America.
.................................................................................................................. 18

   B. The Assignment of Deed of Trust (Wilshire) was void ...................... 21

C. The Court erred in taking judicial notice of the truth of recitations of fact in the Assignment of Deed of Trust (Wilshire)................................. 23

D. There is a factual dispute whether Javaheri's note was in default. ..... 24

IV. JAVAHERI'S CLAIMS FOR QUASI CONTRACT, DECLARATORY AND INJUNCTIVE RELIEF REMAIN VIABLE. .................................... 26

V. STATE ACTION INVOKES DUE PROCESS .................................... 27

VI. CONCLUSION ...................................................................... 28

# TABLE OF AUTHORITIES

CASES

*Adriana Intern. Corp. v. Thoeren* (9th Cir. 1990) 913 F.2d 1406 .......................... 14

*Apao v. Bank of N.Y.* (9th Cir. 2003) 324 F.3d 1091 ............................................. 27

*Baltodano v. Wal-Mart Stores, Inc.* (2011 Dist. Ct. Nevada) No. 2:10-cv-2062 ... 17

*Barrionuevo v. Chase Bank, N.A.* (N.D. Cal. 2012) 885 F. Supp. 2d 964 .............. 7

*Celotex Corp. v. Catrett* (1986) 477 US 317 ......................................................... 25

*Culhane v. Aurora Loan Services of Nebraska* (1st Cir. 2003) 708 F.3d 282 ......... 5

*Fjelstad v. American Honda Motor Co.* (9th Cir. 1985) 762 F.2d 1334 ............... 15

*Frontline Med. Assocs. v. Coventry Health* (C.D. Cal. 2009) 263 F.R.D. 567 ...... 17

*Glaski v. Bank of America* (2013) 218Cal.App.4th 1079 ....................................... 6

*Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366 ....... 23

*Lester v. J.P. Morgan Chase Bank* (N.D. Cal. 2013) 926 F.Supp.2d 1091 ............. 8

*Payne v. Exxon Corp.* (9th Cir. 1997) 121 F.3d 503 ............................................ 15

*Ramírez v. Sánchez Ramos* (1st Cir. 2006) 438 F.3d 92 ........................................ 2

*Reinagel v. Deutsche Bank Nat. Trust Co.* (5th Cir. 2013) 722 F.3d 700 .............. 6

*Salcido v. Aurora Loan Services* (C.D. Cal. 2012) 2012 WL 123280 ................... 24

*Saldate v. Wilshire Credit Corp.* (E.D. Cal. 2010) 686 F. Supp. 2d 1051 ............ 27

*Subramani v. Wells Fargo Bank N.A.* (N.D. Cal. 2013) 2013 U.S. Dist. LEXIS
    156556 ...................................................................................................... 7

*United States v. Hinkson* (9th Cir. 2009) 585 F.3d 1247 ...................................... 15

*United States v. McConney* (9th Cir. 1984) 728 F.2d 1195 ................................... 15

*Wendt v. Host Intern., Inc.* (9th Cir. 1997) 125 F.3d 806 ..................................... 17

*Wong v. Regents of University of California* (9th Cir. 2005) 410 F. 3d 1052 ........ 13

*Wyle v. R.J. Reynolds Industries, Inc.* (9th Cir. 1983) 709 F.2d at 589 ................ 16

*Yeager v. Bowlin* (9th Cir. 2012) 693 F. 3d 1076 ................................................. 15

## STATUTES

Cal. Civ. Code §2934a(a)(1)....................................................................................3

## RULES

Fed. R. Civ. P. 56(c) .........................................................................................25

## TREATISES

4 Miller & Starr, Cal. Real Estate (3d ed. 2003) Deeds of Trust, §10:212 ..........7, 8

# I. CHASE AND CRC WERE NOT AUTHORIZED TO INITIATE FORECLOSE ON THE WELLWORTH PROPERTY

**A. The Substitution of Trustee (Wellworth) was a forgery**

The Substitution of Trustee purporting to substitute California Reconveyance Co. ("CRC") in place of Chicago Title Company as Trustee of the Wellworth Deed of Trust was executed with a forged signature of Deborah Brignac. ER 242 (Second Amended Complaint, p. 242 ¶¶ 36-37).

"Deborah Brignac" signatures appear on the Substitution of Trustee (ER 178) and the Notice of Trustee's Sale (ER 201). The Court found that the signatures were not signed by the same person. (ER 26). The Court did not speculate whether either of the documents was actually signed by Brignac. Brignac did not state that any person was authorized to sign her name. The signature on Deborah Brignac's declaration (ER 175) does not appear to be signed by the person who signed the Substitution of Trustee (ER 178) or the person who signed the Notice of Trustee's Sale (ER 201). This raises a question of fact as to whether or not CRC was authorized to initiate foreclosure.

The Order Granting Defendant's Motion for Partial Summary Judgment (Wellworth) states:

Indeed, for the purposes of this Motion, the Court finds that the signature of Deborah Brignac on the Substitution of Trustee was signed by a different person than that purporting to be Deborah Brignac on the Notice of Trustee's Sale. (Gillies Decl. Ex. 6.)

While the allegation of robo-signing may be true, the Court ultimately concludes that Javaheri lacks standing to seek relief under such an allegation...

The Substitution of Trustee in this case replaces Chicago Title Company with CRC as trustee of the Deed of Trust. (Snedden Decl. Ex. 1.) Javaheri was not party to this assignment, and did not suffer any injury as a result of the assignment. Instead, the only injury Javaheri alleges is the pending foreclosure on his home, which is the result of his default on his mortgage. The foreclosure would occur regardless of what entity was named as trustee, and so Javaheri suffered no injury as a result of this substitution. ER 026:26 - ER 027:21 (Order Granting Defendant's Motion for Partial Summary Judgment -Wellworth).

The essence of standing is that a plaintiff must have a personal stake in the outcome of the litigation. *Ramírez v. Sánchez Ramos* (1st Cir. 2006) 438 F.3d 92, 97. The loss of one's family home to foreclosure is a tragedy.

Chase's Statement of the Case misrepresents Javaheri's contentions. It states on page 3 of the Answering Brief ("AB") that Javaheri alleges "(b) that the signature of Deborah Brignac on the Substitution of Trustee does not match her signature on the Notice of Trustee's Sale and must therefore be forged and the notice consequently invalid." (AB p. 3).

Appellant's Opening Brief does not allege that. It states at pp. 33-34:

Deborah Brignac's declaration, attached to Sneddon's declaration as Exhibit 1, did not acknowledge whether she also signed the Notice of

2

Trustee's Sale attached to Sneddon's declaration as Exhibit 6 [ER 201] that also bears her signature and identifies her as Vice President of CRC. If one of the recorded documents attached to the Sneddon declaration and bearing her signature was a forgery, their mutual endorsement of the forged document(s) under oath casts doubt on their credibility. ER 236.

If the Substitution of Trustee was signed by someone who was not authorized by Chicago Title, or someone who signed the document with a forged signature, then CRC was never authorized to initiate foreclosure. Only the Lender may appoint a successor trustee (see Brief of Appellant, p. 33). The foreclosure could not proceed if the trustee was an imposter, i.e., was not authorized. Plaintiff alleged in the SAC that the signature of "Deborah Brignac, Vice President of JPMorgan Chase Bank" on the Substitution of Trustee was a forgery. ER 242-243 (SAC ¶¶ 36-37).

Chase was not the beneficiary and Brignac had no authority to act on behalf of the beneficiary when someone forged her signature to the Substitution of Trustee. The Substitution of Trustee was unauthorized and fraudulent, so CRC was not authorized to initiate foreclosure against Plaintiff on May 14, 2010, when it recorded the Notice of Default, and it was not acting for the Lender when it filed the Notice of Trustee's Sale on August 16, 2010." ER 244 (SAC ¶ 39).

Cal. Civ. Code §2934a(a)(1) states:

(a)(1)The trustee under a trust deed...may be substituted by the recording in the county in which the property is located of a substitution executed and acknowledged by: (A) all of the beneficiaries under the trust deed, or their successors in interest, and the substitution shall be effective

notwithstanding any contrary provision in any trust deed executed on or after January 1, 1968.

Chase and CRC were not beneficiaries under the deed of trust and therefore were not authorized to execute the Substitution of Trustee.

In its Answering Brief, page 6, Chase argues,

On May 3, 2010, a Substitution of Trustee was recorded in which CRC was designated the trustee. ER, Vol. 1, page 019, lines 27 - 28 (Order Granting Wellworth MSJ). Ms. Brignac or someone authorized by her signed the Substitution in her capacity as a Vice President of JPMorgan. SER, Vol. 3, pages 580, line 26 to page-581, line 4 (SUF, No. 20).

SUF No. 20 does not suggest that someone authorized by Brignac might have signed the Substitution. It states:

As of April 30, 2010, Deborah Brignac ("Brignac") had signing authority as a Vice-President of JPMorgan Chase Bank, N.A. In this capacity, Brignac was authorized to sign and did sign the Substitution on behalf of JPMorgan Chase Bank, N.A. SER 580:26 – 581:4. (SUF 20).

Chase's only supporting evidence for this contention was Brignac's declaration, which ignored the forgeries, and a copy of the Substitution of Trustee.

The Court's Order Granting Wellworth MSJ does not speculate whether someone authorized by Brignac signed the Substitution of Trustee. It states, "Indeed, for the purposes of this Motion, the Court finds that the signature of Deborah Brignac on the Substitution of Trustee was signed by a different person

4

than that purporting to be Deborah Brignac on the Notice of Trustee's Sale." ER 026, p. 26.

Chase turns the facts upside down when it argues, "Although someone other than Ms. Brignac signed on Ms. Brignac's behalf on the NOTS, Javaheri pointed to no evidence that the signature was invalid, that the information contained in the NOTS was incorrect" (AB p. 16). Chase, in effect, takes the witness stand to offer a new fact in its Answering Brief, p. 26: "Ms. Brignac's signature on the NOTS was apparently made by a designated agent because the signature is followed by what look like initials 'ml'... "

There was no finding by the Court that Brignac signed one document or the other. Based on the declaration of Javaheri's handwriting expert, Laurie Hoetzel, the Court found that the documents were not signed by the same person. Chase pretends that the Court agrees with its contention of fact, and then offers an opinion in the AB that *ml* apparently means designated agent.

**B. Javaheri has standing to object to forged, robo-signed documents without alleging tender.**

Courts are increasingly recognizing that a mortgagor has standing to challenge void mortgage assignments. *Culhane v. Aurora Loan Services of Nebraska* (1st Cir. 2003) 708 F.3d 282 states:

A mortgagor has standing to challenge a mortgage assignment as invalid, ineffective, or void (if, say, the assignor had nothing to assign or had no authority to make an assignment to a particular assignee). If successful, a challenge of this sort would be sufficient to refute an assignee's status qua mortgagee. See 6A C.J.S. Assignments § 132. 708 F.3d 282, 291.

A contrary rule would lead to the odd result that the bank could foreclose

on the borrower's property though it is not a valid party to the deed of trust or

promissory note, which would mean that it lacks "standing" to foreclose.

*Reinagel v. Deutsche Bank Nat. Trust Co*. (5th Cir. 2013) 722 F.3d 700, 705.

*Culhane* was followed by *Glaski v. Bank of America* (2013) 218

Cal.App.4th 1079:

We reject the view that a borrower's challenge to an assignment must fail once it is determined that the borrower was not a party to, or third party beneficiary of, the assignment agreement. Cases adopting that position "paint with too broad a brush." (*Culhane v. Aurora Loan Services of Nebraska*, supra, 708 F.3d at p. 290.) Instead, courts should proceed to the question whether the assignment was void. 218 Cal.App.4th at 1095.

We are aware that some federal district courts sitting in California have rejected the post-closing date theory of invalidity on the grounds that the borrower does not have standing to challenge an assignment between two other parties (citations). These cases are not persuasive because they do not address the principle that a borrower may challenge an assignment that is void and they do not apply New York trust law to the operation of the securitized trusts in question. 218 Cal.App.4th at 1098.

Miller & Starr comments on *Glaski*:

After noting the various scenarios regarding chain of title issues, the court of appeal observed that each were alleged to have suffered from the

6

same defect—a transfer to the securitized trust that occurred after the closing date of the trust. According to the court, it had to address, based on these allegations, whether a post-closing date transfer into a securitized trust was the type of defect that would render the transfer void. Relevant to the inquiry was the fact that the trust was formed under New York law, and was also subject to the requirements on REMIC trusts (entities that do not pay federal income tax) by the Internal Revenue Code. New York law provides in relevant part that actions taken in contravention of the trust are void.

4 Miller & Starr, Cal. Real Estate (3d ed. 2003) Deeds of Trust, §10:212, p. 686.

The *Glaski* court concluded:

We conclude that Glaski's factual allegations regarding post-closing date attempts to transfer his deed of trust into the WaMu Securitized Trust are sufficient to state a basis for concluding the attempted transfers were void. As a result, Glaski has a stated cognizable claim for wrongful foreclosure under the theory that the entity invoking the power of sale (i.e., Bank of America in its capacity as trustee for the WaMu Securitized Trust) was not the holder of the Glaski deed of trust. 218 Cal.App.4th at 1097.

Glaski was followed by *Subramani v. Wells Fargo Bank N.A.* (N.D. Cal. 2013) 2013 U.S. Dist. LEXIS 156556:

The Court finds that at the 12(b)(6) stage, Plaintiff has sufficiently stated a claim for wrongful foreclosure based on his allegations that Defendant's 2006 sale of Plaintiff's DOT precluded Defendant from retaining a beneficial interest in the DOT. See *Barrionuevo v. Chase Bank, N.A.* (N.D. Cal. 2012) 885 F. Supp. 2d 964, 975. Plaintiff has sufficiently alleged that Defendant directed the wrong party to issue Notices of Default, that Defendant is not the true beneficiary, and that Defendant failed to abide by the rules regarding transference of the Loan.

Tender is not required where the foreclosure sale is void, rather than voidable, such as when a plaintiff alleges that the entity lacked the authority to foreclose on the property. *Lester v. J.P. Morgan Chase Bank* (N.D. Cal. 2013) 926 F.Supp.2d 1091; 4 Miller & Starr, Cal. Real Estate (3d ed. 2003) Deeds of Trust, §10:212, p. 686.)

## C. A Missing Collateral File indicates that Chase is not authorized to foreclose.

Chase's AB section VIII A 3 is misleading. The subject heading reads, "The District Court Did Not Err in Rejecting Javaheri's Argument That the Bank's Failure to Produce the Original Note Did Not Affect Its Standing to Foreclose." Javaheri did not contend that Chase lacked standing to initiate a non-judicial foreclosure on the Wellworth Property because it failed to produce the original note (AB p. 3). Chase did not produce *any* evidence of its claim. Javaheri's Points and Authorities in Opposition to Summary Judgment (Wellworth) states:

> If the loan was retained by WaMu and then transferred to Chase, there would be accounting records from WaMu's files in the possession of Chase showing that the Subject Loan remained on the books of WaMu until it was seized by the FDIC. Instead of offering the testimony of a qualified expert who examined WaMu's records and found support for Chase's contention, Chase bases its entire claim on the Affidavit of Lost Note, which states without foundation, "The loss of possession is not the result of the original Note being canceled or transferred to another party" (Doc. 60-1, p. 83), and

the declaration of Eric Waller, who concludes: "the hard copy collateral file pertaining to the Subject Loan containing the original of the Note cannot be located." (Doc. 60, p. 3). ER 162.

"Show Me the Note" is a familiar refrain in Chase's foreclosure arsenal. Javaheri argued that Chase was unable to produce *any* original documents as evidence of the loan, as admitted in the declaration of Eric Waller. (OB p. 27). See ER 206 (Waller Decl., Doc. 60, p. 3). Chase's entire claim was based on the P&A Agreement, which made no mention of Javaheri's note or deed of trust. It is unlikely that any bank would lose an entire collateral file. The missing file raises a material question of fact – is Chase authorized to foreclose? The Purchase & Assumption Agreement does not assume that Chase purchased every asset that passed through WaMu's doors.

**D. Conflicting evidence raises a substantial issue whether Chase acquired any interest in Javaheri's Note.**

Chase argues on page 6 of its Answering Brief that on the same day the FDIC and JPMorgan entered a Purchase and Assumption, "The transfer of assets included the Wellworth Loan, which had never been sold to a securitized trust. ER, Vol. 1, page 19, lines 3-14 (Order Granting Wellworth MSJ)."

ER 019:3-14 does not say that. The Order Granting the Wellworth MSJ actually states on page 19: "JPMorgan acquired *certain* of Washington Mutual's assets by entering into a Purchase and Assumption ("P&A") Agreement with the

9

FDIC." ER 019:17-19. Earlier, the Order states, "On September 25, 2008, the FDIC negotiated the sale of *certain* assets held by WaMu to JPMorgan. (SUF 15.)" ER 004:9.

Javaheri alleged that a number written in hand across the recorded Deed of Trust on the Wellworth property, 4325-5-14 corresponded to Standard & Poor's CUSIP Pool Number: 432551. This indicated that WaMu sold the loan to an investment trust prior to the date Chase acquired certain of WaMu's assets. Chase's Answering Brief (p. 16) transposes the number on the Deed of Trust into "4323-5-14" and the Assessor's Parcel Number as 4323-005-014. It also cited ER page 20 lines 13-14. The correct reference is page 24.

The Assessor's Parcel Number is correctly described in Javaheri's pleadings and the Court order as 4325-005-014. The Court made a finding of fact that the "striking resemblance" between the number written on the Deed of Trust and the Pool Number was nothing more than a "rare coincidence."

> While the number written on the Deed of Trust bears a striking resemblance to a number associated with a securitized trust, Plaintiff simply fails to produce sufficient evidence to establish that this is anything more than a rare coincidence. The Court therefore finds that Javaheri has failed to establish that JPMorgan does not own his Note and Deed of Trust. ER 025:22-26.

The Court decided that the striking resemblance between the facts alleged by Javaheri that linked the DOT to the CUSIP number were a rare coincidence. Then the Court resolved this factual issue in favor of Chase.

## II. THE COURT ERRED IN DENYING JAVAHERI'S REQUEST TO ADD WILLIAM PAATALO AS AN EXPERT WITNESS (WILSHIRE).

Chase argues on page 5 of its Answering Brief, "As part of its ruling on the motion, the District Court struck the Paatalo declaration of Javaheri's expert, William Paatalo, based upon because Javaheri had not's failure to timely designate him as a witness." (sic).

Those are not actually the Court's words. The Order Granting Partial Summary Judgment (Wilshire) concluded, "the Court GRANTS Defendants' Motion for Summary Judgment on all claims. Javaheri's pending request for leave to add Paatalo as an expert trial witness (ECT No 124) is therefore DENIED AS MOOT." ER 014.

### A. Paatalo's Declaration was timely for purposes of the motion for summary judgment.

The Court disregarded the evidence offered in the Paatalo declaration and exhibits, which were submitted more that 21 days before the summary judgment hearing, then ignored Javaheri's Statement of Genuine Issues, granted Chase's

motion for summary judgment, and finally denied Javaheri's request to add

Paatalo as an expert witness as "MOOT."

    The Order stated in footnote 1:

    This Factual Background section is drawn almost entirely from
    Defendants' separate statement of undisputed facts and supporting
    evidence. Because Javaheri's statement of genuine disputes failed to
    dispute any of Defendants' undisputed facts, the Court considers all of the
    facts contained within Defendants' separate statement "undisputed for
    purposes of the motion." Fed. R. Civ. P. 56(e)(2). ER 003.


    Javaheri's Statement of Genuine Issues disputes numerous "undisputed"

facts. See ER 524-527:

    Plaintiff contends that there exists a genuine issue as to each of the
    following material facts that must be litigated:
    1. The Subject Loan is not in default. Chase asserts that the total unpaid
    balance and other charges on the Loan were estimated to be $1,105,716.79
    as of November 18, 2011. (UMF No. 33, Doc 102-1, p. 9-10). According to
    the Declaration of William Paatalo, in February of 2012, the current
    amount due on the subject loan was $974,978. As of 11/01/12, the amount
    due had dropped to $955,106. (Paatalo Decl., ¶¶49-50 and attached
    Exhibits "D" and "F").
    3. There is no evidence that the subject Deed of Trust was transferred
    as part of the 2007-HY1 sale. (Paatalo Decl., ¶22).
    5. There is a complete absence of documentation to show that the
    Depositor ever transferred the Series 2007-HY1 mortgages to the Trustee.
    (Paatalo Decl., ¶23).
    7. Five transfers of the subject Deed of Trust were supposed to have
    been made on the PSA journey. There are no documents to confirm that
    this journey ever actually took place. (Paatalo Decl., ¶26).
    8. The Assignment of Deed of Trust by "JP Morgan Chase Bank as
    successor in interest to Washington Mutual Bank, F.A." dated 05/18/10

12

indicates that the Depositor never transferred the subject Deed of Trust into the Trust prior to the cut off date. This transfer took place more than three years after the cut off date of 1/1/2007, which contradicts any claim that the subject Deed of Trust and the other mortgages in Series 2007-HY1 Trust were purchased by the Depositor and then resold to the Trust. (Paatalo Decl., ¶¶28-29).

9. There is no evidence that Chase ever transferred the note to the Trustee, La Salle or its successor BAC, by endorsement or otherwise. (Paatalo Decl., ¶31).

10. The Prospectus Supplement states that WAMU will not transfer the notes to the Trust despite statements to the contrary in the PSA. (Paatalo Decl., ¶34).

12. The fact that the subject note in Javaheri's case was allowed to float about as "bearer paper" and suddenly be assigned to the WaMu 2007-HY1 Trust more than three years beyond the Trust's closing date contravenes its own laws. (Paatalo Decl., ¶39).

14. There is no evidence that the Trustee or Depositor ever delivered the mortgage portfolio to the Custodian. (Paatalo Decl., ¶43).

15. In the Prospectus Supplement, WAMU states that it will not transfer the notes to the Trust despite statements to the contrary in the PSA. (Paatalo Decl., ¶45).

16. The Javaheri loan never made it to the "WaMu Mortgage Pass-Through Certificates Series 2007-HY1 Trust." Chase alleges that "Washington Mutual Bank" sold Plaintiff's Note to "Washington Mutual Asset Acceptance Corporation" on or about January 1st, 2007," but there is no evidence that this sale ever took place (Paatalo Decl., ¶¶47, 53).

17. The subject loan remains with the FDIC due to the facts outlined above. The FDIC could not sell to Chase that which Washington Mutual Bank did not own. (Paatalo Decl., ¶62).

Chase cites *Wong v. Regents of University of California* (9th Cir. 2005) 410 F. 3d 1052, where the court emphasized that the pretrial order was clear in

advising the parties that an expert witness not identified by the deadline would

not be permitted to testify. Judge Wright did not write such a pretrial order.

*Wong* cautions:

> Deadlines must not be enforced mindlessly, of course. Sometimes there may be good reason to permit an identification of additional witnesses after the established deadline. The pretrial order at issue here took that into account and itself established the standard for seeking relief from the order.
> ...Wong argues that he could not reasonably have anticipated the need for the additional witnesses as of the date set by the pretrial order as the deadline for both parties to identify expert witnesses, because he did not know that the University was disputing that he was "disabled" under the Acts...After Wong I, the University put Wong on some measure of notice that his disabled status would be challenged. *Wang*, 410 F.3d at 1060-1061.

Fed. R.Civ.P. 37(c)(1) states in relevant part:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

Before dismissing a case for noncompliance with court-ordered discovery

under Rule 37, the district court must weigh the following five factors:(1) the

public's interest in expeditious resolution of litigation; (2) the court's need to

manage its docket; (3) the risk of prejudice to the defendants; (4) the public

policy favoring disposition of cases on their merits; and (5) the availability of

less drastic sanctions. *Adriana Intern. Corp. v. Thoeren* (9th Cir. 1990) 913 F.2d

1406, 1412.  The district court's October 5, 1995, order recounted these factors

14

and concluded that on balance they justified giving the plaintiffs "one last chance to comply with the court's previous orders." *Payne v. Exxon Corp.* (9th Cir. 1997) 121 F.3d 503, 507.

Under the abuse of discretion standard, the review court first determines de novo whether the trial court identified the correct legal rule to apply to the relief requested. If so, it then determines whether the trial court's application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record. *Yeager v. Bowlin* (9th Cir. 2012) 693 F. 3d 1076, 1079-1080; *United States v. Hinkson* (9th Cir. 2009) 585 F.3d 1247, 1262.

Judge Wright did not apply the balancing test when he disregarded Javaheri's Statement of Genuine Issues and struck the Paatalo declaration as moot.

Where the drastic sanctions of dismissal or default are imposed, however, the range of discretion is narrowed and the losing party's non-compliance must be due to willfulness, fault, or bad faith." *Fjelstad v. American Honda Motor Co*. (9th Cir. 1985) 762 F.2d 1334, 1337. The district court's selection of the applicable legal standards is reviewable de novo. *United States v. McConney* (9th Cir. 1984) 728 F.2d 1195, 1200-01 (en banc).

Due process limits the imposition of the severe sanctions of dismissal or default to "extreme circumstances" in which "the deception relates to the matters in controversy" and prevents their imposition "merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case." *Wyle v. R.J. Reynolds Industries, Inc*. (9th Cir. 1983) 709 F.2d at 589, 591.

## B. Striking the Paatalo declaration prevented the Court from deciding Javaheri's case on the merits, and less drastic sanctions were available.

Javaheri disclosed Paatalo almost immediately after Chase filed its summary judgment motion. The timing of Chase's motion was expertly timed to bar Plaintiff from contesting unexpected issues. It is not reasonable to anticipate that the largest bank would record an assignment of a deed of trust merely to reassure the public that it did not have any interest in the deed of trust. Chase's feel-good strategy of recording fictitious assignments was a surprise.

The Court stated, "Javaheri's expert witness disclosures were due on October 17, 2012. Javaheri first served Paatalo's declaration on Defendants on November 5, 2012, over two weeks late." ER 008. It was an abuse of discretion to strike William Paatalo's declaration and exhibits when less drastic measures were available to address a first infraction of being two weeks tardy, especially where an individual litigant faces a $2.5 trillion-dollar institution flanked by thousands of lawyers.

16

The Court should consider whether a sanction is proper under a five-factor test analyzing: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the non-offending party; (4) the public policy favoring disposition of cases on their merits; (5) the availability of less drastic sanctions. *Wendt v. Host Intern., Inc.* (9th Cir. 1997) 125 F.3d 806, 814. Where the harm can be easily remedied, exclusion is not the proper sanction. See *Frontline Med. Assocs. v. Coventry Health* (C.D. Cal. 2009) 263 F.R.D. 567, 570; *Baltodano v. Wal-Mart Stores, Inc.* (2011 Dist. Ct. Nevada) No. 2:10-cv-2062.

Delay would be harmless. Chase is defending more than 10,000 legal lawsuits, according to the bank's 10-K filing with the Securities and Exchange Commission dated February 28, 2011. A delay of a few weeks in the Javaheri matter would not greatly prejudice Chase. The District Court's calendar would be adjusted, but this does not outweigh Javaheri's loss of two properties, including his family home, to a bank that set the record for civil penalties.

Chase agreed in 2013 to settle with the U.S. Department of Justice for $13,000,000,000 - the largest settlement in history - to resolve federal and state civil claims arising out of the packaging, marketing, sale and issuance of residential mortgage-backed securities. Chase acknowledged it made serious misrepresentations to the public, including the investing public, about numerous

17

RMBS transactions.  The agreement requires Chase to provide $4 billion worth of consumer relief to remediate harms allegedly resulting from unlawful conduct of JPMorgan, Bear Stearns and Washington Mutual. Covered conduct does not include: (i) conduct relating to the origination of residential mortgages; or (ii) origination conduct unrelated to securitization, such as soliciting, aiding or abetting borrower fraud. Nor does the settlement absolve Chase or its employees from facing criminal charges.[1]

Paatalo's declaration and exhibits provide plausible evidence that Chase was not authorized to initiate foreclosure on the Wilshire property, which outweighs the inconvenience of granting the first continuance of the trial date.

## III. CHASE AND CRC WERE NOT AUTHORIZED TO INITIATE FORECLOSURE ON THE WILSHIRE PROPERTY

**A.  The loan was not transferred to Chase, LaSalle, or Bank of America.**

The Order for Partial Summary Judgment states at ER 003:11-14

On January 1, 2007, WaMu sold the beneficial interest in Javaheri's loan to WaMu Asset Acceptance Corporation, which then transferred the loan to LaSalle Bank National Association, as trustee of the Washington Mutual Mortgage Pass-Through Certificates Series 2007-HY1 Trust (the "2007-HY1 Trust"). (SUF 6.).

---

[1] http://www.justice.gov/opa/pr/2013/November/13-ag-1237.html

The Court's conclusion is based on ¶6 of Chase's Statement of

Uncontroverted Facts [SER 85-86]:

| Chase's Uncontroverted Facts ¶6. | Supporting Evidence ¶6. |
|---|---|
| On or about January 1, 2007, the Loan was sold by WaMu to WaMu Asset Acceptance Corporation ("WMAAC"), which then transferred the Loan to LaSalle Bank National Association ("LaSalle Bank"), as trustee of the Washington Mutual Mortgage Pass-Through Certificates Series 2007-HYl Trust (the "2007-HYl Trust"). | Complaint, ¶13; Silva Decl., ¶6 and its Exh. 2 (the Mortgage Loan Purchase and Sale Agreement between WaMu and WMAAC (the "MLPS&A Agreement") at §2.1 (a), and its Exh. 3 (the Pooling and Servicing Agreement between WaMu, WMAAC, and LaSalle Bank National Association ("LaSalle Bank") as Trustee of the WaMu Mortgage Pass-Through Certificates Series 2007-HY1 Trust (the "2007-HY1 Trust") (the "P&S Agreement")), at §2.04. |

The supporting evidence for ¶ 6 consists of three elements:

**1. Javaheri's Complaint (Wilshire) ¶13:**

13. Between December 14 and 31, 2006, WaMu transferred Plaintiff's Note to Washington Mutual Mortgage Securities Corporation. An Assignment of Deed of Trust dated May 18, 2010 (Plaintiff's Exhibit 5), indicates that the Note was sold to Washington Mutual Mortgage Pass-Through Certificates Series 2007-HY1 Trust and became a part of, or was subject to, a Loan Pool, a Pooling and Servicing Agreement, a Collateralized Debt Obligation, a Mortgage-Backed Security, a Mortgage Pass-Through Certificate, an Investment Trust, and/or a Special Purpose Vehicle. Thereafter, WaMu acted solely as a servicer of the loan, and was

neither a Lender nor a Beneficiary after December 2006. The closing date for Series 2007-HY1 REMIC Trust was January 24, 2007, which was the cut-off date for adding loans or securities to the pool under the Pooling and Servicing Agreement and New York State trust and securities law. The Assignment of DOT (Exhibit 5) is invalid. ER 569.

The allegation in ¶13 of Javaheri's Complaint was based on hearsay declarations in the Assignment of Deed of Trust dated May 18, 2010 (ER 622, Plaintiff's Exhibit 5), which indicates that the Note was sold to Washington Mutual Mortgage Pass-Through Certificates Series 2007-HY1 Trust. Chase's SUF ¶6 in support of its Motion for Summary Judgment established that the Assignment of Deed of Trust, executed by Colleen Irby, Officer or JPMorgan Chase, was a ruse because Chase did not claim to hold an actual beneficial interest in the DOT when the Assignment of DOT was recorded.

### 2. Declaration of Roberto Silva ¶6 (SER 94-99):

¶6. In accordance with the Mortgage Loan Purchase and Sale Agreement between WaMu and WMAAC (the "MLPS&A Agreement") and the Pooling and Servicing Agreement between WaMu, WMAAC, and LaSalle Bank National Association ("LaSalle Bank") as Trustee of the WaMu Mortgage Pass-Through Certificates Series 2007-HY1 Trust (the "2007-HY1 Trust") (the "P&S Agreement"), on or around January 1, 2007, WaMu transferred all of its right, title and interest in the Loan to WMAAC, after which WMAAC transferred all of its right, title and interest in the Loan to LaSalle Bank as trustee of the 2007-HY1 Trust. The MLPS&A Agreement and the P&S Agreement are among the records of which JPMorgan took possession after it purchased certain assets of WaMu from the FDIC. To the best of my knowledge and based on my review of the documents; true and correct copies of the MSPS&A Agreement (not

including confidential addenda) and the P&S Agreement are attached hereto as Exhibits 2 and 3, respectively.

### 3. Silva Declaration Exhibits 2 and 3

The Mortgage Loan Purchase and Sale Agreement between WaMu and WMAAC (Exh. 2) and the Pooling and Servicing Agreement between WaMu, WMAAC, and LaSalle Bank National Association (Exh. 3) do not include any reference to Javaheri's property. See Docs. 103-2 to 103-5 (311 pages in total).[2]

Chase's Uncontroverted Fact ¶6, which was adopted in its entirety by the Court, is contradicted by Javaheri's Statement of Genuine Issues in Opposition to the Wilshire Motion for Summary Judgment, ¶¶ 5, 8, 9, 10, 16, and 17 [ER 525-527]. See ¶¶5-17 above on pages 12-13.

### B. The Assignment of Deed of Trust (Wilshire) was void

The Order for Partial Summary Judgment continues:

Later in 2007, Bank of America took LaSalle's place as trustee of the 2007-HY1 Trust as the successor by merger to LaSalle. As a result, Bank of America is the current trustee of the 2007-HY1 Trust and beneficial interest-holder in Javaheri's loan." ER 003:14-16.

No evidence to support this factual conclusion is cited in the Order.

Chase's SUF 29 states:

_____

[2] Appellant hesitates to deposit with this Court 1,244 pages of Chase exhibits, on file, that say nothing about the Subject Property.

21

29. On May 20, 2010, an Assignment of Deed of Trust was recorded in the Los Angeles County Recorder's Office as Instrument No. 20100687282, in which JPMorgan assigned the beneficial interest in the DOT it acquired from the FDIC, if any, to Bank of America, National Association, successor by merger to LaSalle Bank, National Association as trustee for Washington Mutual Mortgage Pass Through Certificates Series 2007- HY1 Trust (the "2007-HY1 Trust")

30. At the time the Assignment of DOT was recorded, JPMorgan did not claim to hold an actual beneficial interest in the DOT since WaMu had transferred the Loan to the 2007-HY1 Trust before September 25, 2008, when JPMorgan acquired certain of WaMu's assets from the FDIC as receiver. However, at the time the Assignment of Deed of Trust was recorded, it could appear to the general public, based upon the recorded public records, that JPMorgan was the then-current beneficiary under the DOT.

The "recorded public records" necessitating this superfluous Assignment of Deed of Trust were never produced by Chase or identified by the Court. Furthermore, the Court's finding is contradicted by Javaheri's Statement of Genuine Issues in Opposition to the Wilshire Motion for Summary, ¶¶ 3 and 8.

3. There is no evidence that the subject Deed of Trust was transferred as part of the 2007-HY1 sale. (Paatalo Decl. ¶22). ER 525:13.

8. See ¶3 above, page 11.

In summary, there is a conflict in the evidence offered in support of and in opposition to Chase's Motion for Summary Judgment (Wilshire).

**C. The Court erred in taking judicial notice of the truth of recitations of fact in the Assignment of Deed of Trust (Wilshire).**

The District Court declined Chase's request for judicial notice of the Assignment of DOT in ruling on Chase's motion to dismiss the Wilshire complaint. At no time did the Court take judicial notice of the Assignment of DOT or the NOTS. The Order states:

> JP Morgan also requests that the Court take judicial notice of the Notice of Trustee's Sale. The Court does not consider JP Morgan's request with respect to that document at this time. ER 048. (Order Granting In Part and Denying In Part Defendant's Motion to Dismiss, fn. 2).

However, the Order Granting Partial Summary Judgment repeated the contentions in Chase's SUF that JPMorgan executed the Assignment to clarify in the public records that it was not the then-current beneficiary under the Deed of Trust.    ER 004:24-005:4. No other document was offered by Chase that might have explained why it was necessary to reassure "the general public, based upon the recorded public records, that JPMorgan was the then-current beneficiary under the DOT" (sic) as stated in Chase's SUF 30. SER, p. 91.

The more likely explanation for recording the Assignment is that the Deed of Trust could not be transferred to the trust before closing. This raises a question of fact that was not resolved by summary adjudication.

In *Herrera v. Deutsche Bank National Trust Co*. (2011) 196 Cal.App.4th 1366, the court concluded that it was not proper to take judicial notice of the

truth of several recitations of fact within a substitution of trustee and an

assignment of deed of trust. The *Herrera* court wrote:

> The substitution of trustee recites that the Bank is the present
> beneficiary under the 2003 deed of trust. As in *Poseidon*, this fact is
> hearsay and disputed; the trial court could not take judicial notice of it. Nor
> does taking judicial notice of the assignment of deed of trust establish that
> the Bank is the beneficiary under the 2003 deed of trust... The recitation
> that JPMorgan Chase Bank is the successor in interest to Long Beach
> Mortgage Company, through Washington Mutual, is hearsay. . . Judicial
> notice of the recorded documents did not establish that the Bank was the
> beneficiary or that CRC was the trustee under the 2003 deed of trust." (*Id.*
> 196 Cal.App.4th 1375.)

In accord is *Salcido v. Aurora Loan Services* (C.D. Cal. 2012) 2012 WL

123280, No. CV 11-02032 AHM FFMX.

The hearsay recitations of fact in the Chase's Assignment of Deed of

Trust do not support summary judgment in favor of Chase.

**D. There is a factual dispute whether Javaheri's note was in default.**

Chase argues in its Answering Brief on page 8: "In February 2010,

Plaintiff defaulted on his payment obligations under the Wilshire Loan. ER, Vol.

1, page 4, lines 16-17 (Id.)."

Javaheri's Statement of Genuine Issues states:

1. The Subject Loan is not in default. Chase asserts that the total unpaid
balance and other charges on the Loan were estimated to be $1,105,716.79
as of November 18, 2011. (UMF No. 33, Doc 102-1, p. 9-10). According to
the Declaration of William Paatalo, in February of 2012, the current
amount due on the subject loan was $974,978. As of 11/01/12, the amount

due had dropped to $955,106. The principal balance of the loan decreased by $19,872 in nine months. The certificate holders have been receiving payments toward Plaintiff's alleged obligation and there is no default. (Paatalo Decl., ¶¶49-50 and attached Exhibits "D" and "F").

The Summary Judgment Order states:

Finally, Javaheri makes the curious argument that "[t]he Beneficiary cannot initiate foreclosure against Plaintiff unless there is a default" and proceeds to imply that he was not in default because the "balance of [his] loan has decreased $150,610 in the eight months since the Complaint was filed, and the principal balance has dropped from $975,000 to $955,106." (Opp'n 6.) The Court need not give this argument serious consideration, as the only "evidence" Javaheri submits in support of this argument is attached to the stricken Paatalo declaration. (Pl.'s Statement of Genuine Issues 1.) This inadmissible evidence is insufficient to satisfy Javaheri's burden to bring forth a genuine issue of material fact through admissible evidence. *Celotex Corp. v. Catrett* (1986) 477 US 317, 323–24; Fed. R. Civ. P. 56(c).

But the argument fails on the merits, as well. The May 20, 2010 NOD noted that Javaheri was in default in the amount of $22,851.64, which amount would increase until his account became current. ER 010.

The District Court took judicial notice of a disputed hearsay fact in a recorded document when it found that the "NOD noted that Javaheri was in default in the amount of $22,851.64." No evidence was offered to support this finding. Then the Court speculated, without any foundation in the record:

Indeed, Javaheri's $22,851 arrears could have blossomed into significantly more in the two-and-a-half years since the NOD was filed— possibly in excess of the payments Javaheri has made over the last eight months. Thus, even if the Court could consider Javaheri's evidence on this point, the argument is, at best, merely colorable and therefore insufficient to create a genuine issue of material fact. ER 10-11.

25

A Beneficiary cannot initiate foreclosure unless there is a default. However, the Court ruled, "California's nonjudicial-foreclosure scheme does not allow a court action to challenge the authorization of a foreclosing entity in a non-judicial foreclosure." ER 009:5 (Order Granting Summary Judgment - Wilshire). If that is California law, then anyone could foreclose on anybody's home with impunity - regardless of whether or not the homeowner is current on the payments or the intruder has authority to foreclose. No homeowner is safe.

## IV. JAVAHERI'S CLAIMS FOR QUASI CONTRACT, DECLARATORY AND INJUNCTIVE RELIEF REMAIN VIABLE.

If the case proceeds on the first cause of action for wrongful foreclosure, then Javaheri's causes of action for quasi contract, quiet title, and declaratory and injunctive relief will also be at issue, because they are dependant upon the first cause of action. Javaheri has not "presented disposition" or otherwise abandoned those causes of action, as suggested in Chase's AB p. 3.

The District Court stated in the Wellworth case:

Third, the Court will examine Plaintiff's second claim for wrongful foreclosure, fifth claim for quiet title, third claim for quasi contract, and sixth claim for declaratory and injunctive relief, all of which can be resolved by examining the parties' dispute as to who properly owns the Note. ER 059. JPMorgan correctly contends that unjust enrichment, restitution, or quasi contract are not independent causes of action. ER 059 (Order Granting and Denying Motion to Dismiss SAC - Wellworth).

In the Wilshire case, the Order granting Chase's Motion for Summary Judgment stated, "Javaheri's quasi-contract claim fails because JPMorgan is the proper party to initiate foreclosure. ER 006.

The causes of action remain active, contingent upon issues raised herein.

## V. STATE ACTION INVOKES DUE PROCESS

Contrary to Chase's assertion, the issue of Due Process was raised by Javaheri in both cases in District Court, as described in Brief of Appellant, pp. 10-13.

*Apao v. Bank of N.Y.* (9th Cir. 2003) 324 F.3d 1091concluded that a bank using a non-judicial foreclosure procedure provided by state law was not a government actor. "There was insufficient state involvement to attribute the [non-judicial] foreclosure to the state."

However, nonjudicial foreclosure is a creature of state action. Every step is spelled out with precision in the California Civil Code. Courts frequently describe how the comprehensive statutory framework established to govern nonjudicial foreclosure sales is intended to be exhaustive. "It includes a myriad of rules relating to notice and right to cure. It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory

nonjudicial foreclosure proceedings." *Saldate v. Wilshire Credit Corp.* (E.D. Cal. 2010) 686 F. Supp. 2d 1051, 1067-1068.

The national epidemic of forged documents, missing files, false affidavits, and unsubstantiated claims of entitlement to real property has gone unchecked, as courts have looked the other way.

## VI. CONCLUSION

*Nemo dat quod non habet*. No one gives what he doesn't have.  Chase offers no proof of its claim to Javaheri's properties other than a generic Purchase & Assumption Agreement, a missing collateral file, forged foreclosure documents, and a remarkable concern for public appearances.

Defendant's motions for summary judgment should have been denied. For the above-stated reasons, Daryoush Javaheri respectfully requests that the summary judgment orders be reversed.

Date: December 12, 2013

s/ Douglas Gillies
Attorney for Daryoush Javaheri

**CERTIFICATE OF COMPLIANCE**

**CASE NO. 12-56566 and 13-55048**


Pursuant to F.R.A.P. Rule 32, I certify that this Reply Brief is proportionately spaced with Times New Roman 14 point typeface and contains no more than 7,000 words pursuant to Rule 32(a)(7)(B).

I certify that Appellant Daryoush Javaheri's Reply Brief contains 6,998 words.


DATED: December 12, 2013

s/ Douglas Gillies
Attorney for Plaintiff-Appellant

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Appellant's Opening Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on December 12, 2013.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Douglas Gillies

Attorney for Plaintiff/Appellant